UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

CIVIL ACTION NO. 2013-129 - WOB-REW

AMERICAN GENERAL LIFE
INSURANCE COMPANY                                    PLAINTIFF

VS.                    MEMORANDUM OPINION AND ORDER

ELLEN V. HARSHMAN                                    DEFENDANT


Plaintiff/Counterclaim Defendant American General Life Insurance Co. ("American General") brought this suit pursuant to the Declaratory Judgment Act, seeking a declaration that no policy of insurance existed between it and Peter Harshman.  Doc. 1, at ¶¶ 21-25.  Defendant/Counterclaim Plaintiff Ellen Harshman -- Peter Harshman's wife and purported beneficiary -- filed an Answer and Counterclaims.  She asserts claims against American General for violation of Kentucky Revised Statutes section 304.12-030, breach of contract, breach of the implied covenant of good faith and fair dealing, bad faith under the common law and Unfair Claims Settlement Practices Act ("UCSPA") and Kentucky Consumer Protection Act ("KCPA"), unjust enrichment, and punitive damages.  Doc. 11, at ¶¶ 54-80.

This matter is now before the Court on cross motions for summary judgment (Docs. 60, 73) and a motion to strike (Doc. 76).  The Court previously heard oral argument on these motions

and took them under advisement.  Doc. 99.

Having further reviewed this matter, the Court now issues the following Memorandum Opinion and Order.

### *Factual and Procedural Background*

On February 2, 2011, Columbus Life Insurance Co. issued a $500,000 policy insuring the life of Peter Harshman.  Doc. 60-5. Also in 2011, Mr. Harshman applied for another life insurance policy from American General in the amount of $1,000,000.  Doc. 60-14, at 23-32.

Mr. Harshman signed and submitted an application for insurance ("Application") to American General on September 26, 2011.  *Id.* at 26.  Mrs. Harshman testified in her deposition that the information in the Application came from her and Mr. Harshman and that the signature on Part A of the Application is her husband's.  Doc. 60-20, at 3-4. A Paramedical Examiner, Erin Perry, assisted Mr. Harshman with completing the medical questions contained in Part B of the Application.  *See* Doc. 60-14, at 30.  Part B of the Application contains Mr. Harshman's electronic signature and Erin Perry's electronic signature, both dated September 26, 2011.  *Id.*

2

Part A of the Application -- which indisputably bears Mr. Harshman's actual signature -- contains the following important language[1] above the signature line:

> I, the Primary Proposed Insured and Owner signing below, agree that I have read the statements contained in this application and any attachments or they have been read to me. They are true and complete to the best of my knowledge and belief. **I understand that this application: (1) will consist of Part A, Part B, and if applicable, related attachments including supplement(s) and addendum(s); and (2) shall be the basis for any policy and any rider(s) issued.** I understand that any misrepresentations contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if: (1) such misrepresentation materially affects the acceptance of the risk; and (2) the policy is within its contestable period.
>
> Except as may be provided in any Limited Temporary Life Insurance Agreement, **I understand and agree that even if I paid a premium no insurance will be in effect under this application, or under any new policy or any rider(s) issued by the Company, unless or until all three of the following conditions are met: (1) the policy has been delivered and accepted; and (2) the first full modal premium for the issued policy has been paid; and (3) there has been no change in the health of the Proposed Insured(s) that would change the answers to any question in the application before items (1) and (2) in this paragraph have occurred. I understand and agree that if all three conditions above are not met: (1) no insurance will begin in effect; and (2) the Company's liability will be limited to a refund of any premiums paid, regardless of whether loss occurs before premiums are refunded.**

Doc. 60-14, at 26 (emphasis added).

---

[1] Part B of the Application -- which bears Mr. Harshman's electronic signature -- contains nearly identical language. Doc. 60-14, at 30.

Additionally, when completing Part A of the Application, Mr. Harshman indicated, by checking a "yes" box in Section 10.A., that he wanted to "replace" his Columbus Life Policy with the American General policy for which he was applying. *Id.* at 24. The Application defines "replace" as follows: "Replace means that the insurance being applied for may replace, change or use any monetary value of any existing or pending life insurance policy or annuity." *Id.* But Mr. Harshman never actually replaced his Columbus Life policy; it remained in force until his death. *See* Doc. 60-18, at 2-3.

Following Mr. Harshman's submission of his Application to American General, but before the company issued a policy, he received medical treatment on three different occasions. Mr. Harshman first visited Dr. Peter Liu on October 21, 2011, complaining of muscle pain and weakness. Doc. 60-8, at 4. Dr. Liu referred Mr. Harshman to a neurologist, Dr. Patrick Leung, for a consultation; Mr. Harshman then saw Dr. Leung on November 18, 2011. Doc. 60-10, at 2. Dr. Leung's notes from the visit indicate that Mr. Harshman's symptoms could be consistent with "[m]otor neuron disease or ALS." *Id.* at 3. The final medical treatment was an emergency room visit on November 26, 2011; while walking down a flight of stairs, Mr. Harshman's legs gave

4

out and he fell, hitting his head. Doc. 60-12, at 2. He consulted Dr. William Wooster at the emergency room. *Id.* at 3.

On November 16, 2011, Mr. Harshman signed a Policy Acceptance and Amendment of Application ("Amendment") form sent to him by American General. Doc. 60-9, at 2. The Amendment first noted some changes that Mr. Harshman needed to make to his answers on Part B of his Application. *Id.* The form then required Mr. Harshman to make the following representation to American General:

> I represent, on behalf of myself and any dependent who may have been proposed for insurance, that to the best of my knowledge and belief:
>
> 1. There have been no changes since the date of the application in my health or in any other condition; and
> 2. **Neither I nor any other proposed insured has since the date of the application:**
>    **a. Consulted a licensed health care provider or received medical or surgical advice or treatment;** or
>    b. Acquired any knowledge or belief that any statements made in the application are now inaccurate or incomplete.

Doc. 60-9, at 2 (emphasis added). Mr. Harshman signed this representation on November 16, 2011, without disclosing to American General that he had visited Dr. Liu, a licensed health care provider, on October 21, 2011. *See id.*

Mr. Harshman paid the first premium due on the policy on November 29, 2011. Doc. 60-13, at 2. The $1,000,000 policy

5

insuring his life purportedly took effect on December 15, 2011. Doc. 60-14, at 4.

On October 26, 2012, Mr. Harshman died of respiratory failure, a complication due to ALS. Doc. 60-17, at 2. Mrs. Harshman submitted a claim for payment of the $1,000,000 death benefit to American General on November 21, 2012. *Id.*[2] Because Mr. Harshman died within two years of the issuance of the policy, American General conducted a contestable claims investigation in response to Mrs. Harshman's claim for benefits. Doc. 60-19, at 3.

On April 10, 2013, American General sent Mrs. Harshman a letter denying her claim for benefits. *Id.* In that letter, American General referenced the language quoted above from the Application and the Amendment. *Id.* at 2-3. With respect to the Application, American General cited the language stating that "no insurance will be in effect" unless certain conditions were satisfied. *Id.* With respect to the Amendment, American General cited the representation Mr. Harshman made stating that he had not consulted a licensed health care provider since the date he applied for insurance. *Id.* at 3.

---

[2] As noted above, Mr. Harshman's Columbus Life policy was still in force at the time of his death. Mrs. Harshman therefore received approximately $250,000 from Columbus Life in August of 2012 as part of an accelerated death benefits claim following her husband's March 2012 ALS diagnosis; she received another approximately $250,000 payment from Columbus Life in January of 2013 following her husband's death. Doc. 60-18, at 2-3.

The letter then went on to explain the basis for American General's denial of Mrs. Harshman's claim and the company's decision to rescind the policy:

> After the physical examination on September 26, 2011 **but prior to the signing of the Good Health statement on the Policy Amendment** and prior to the first premium payment on November 30, 2011; Mr. Harshman consulted Dr. Peter Liu on October 21, 2011 complaining of a history of muscle spasms and weakness of both arms and legs beginning in September.  He indicated that there were no changes in this Condition after he discontinued taking Simvastatin.  This office visit should have been included on the Health Statement and the policy returned to American General.  **True information concerning this office visit would have changed the answers to Application questions Part B 5A9 and 5G from "no" to "yes".**
>
> A neurology referral with Dr. Patrick Lueng on November 18, 2011 noting a history of rapidly progressing weakness in the right arm and leg with muscle twitches since September, 2011 and EMG/NCS done on the same day suggests a diagnosis of motor neuron disease.  Additionally there was treatment at St Joseph Hospital Emergency Department on November 26, 2011 for a head injury caused by his legs giving out.  Both these medical interventions occurred after the Good Health Statement was signed but prior to the payment of the policy premium on November 30, 2011 and prior to the policy effective date of December 15, 2011[.]
>
> **If American General's Underwriting department had been aware of the true facts concerning Mr. Harshman's health history and condition, it would not have issued this policy.**  If the symptoms had first manifest[ed] prior to the application date of September 26, 2011 and the Underwriting Department had been aware of those symptoms, they would have delayed issuing the policy until a full neurological work-up could have been completed.
>
> **Therefore, due to the misrepresentation of pertinent information on the application and its attachments,**

7

**supplements and addendums, it is necessary to rescind this policy, making the policy null and void from its inception date.** Premium received since the effective date will be refunded to you.

*Id.* (emphasis added).

On May 6, 2013, American General initiated this declaratory judgment action. Doc. 1. On August 12, 2103, Mrs. Harshman filed an Answer and Counterclaim against American General. Doc. 11.

### *Analysis*

**A.   Harshman's Motion to Strike**

**1.   The Amendment Form**

There is a signed copy of the Amendment form in the record, and the form clearly states that it "will be made a part of the policy." Doc 60-9, at 2. Mr. Harshman therefore gave his written consent to the changes to the Application by signing the Amendment. Contrary to Mrs. Harshman's counsel's statutory interpretation, this is plainly all that the insurance code requires: "Any application for insurance in writing by the applicant shall be altered solely by the applicant *or by his written consent* . . . ." Ky. Rev. Stat. Ann. § 304.14-090(1) (emphasis added).

Mrs. Harshman's counsel also advances an ill-founded reading of the Kentucky statutes in support of his argument that an unsigned Amendment form cannot be made part of the policy via

8

attachment.   This argument ignores the reality that American General sent Mr. Harshman the policy for review -- including as part of the policy an unsigned Amendment form and both parts of the Application -- *at the same time it requested that he sign the Amendment form because Kentucky's insurance code so requires.*   Ky. Rev. Stat. Ann. § 304.12-030(2)(b) ("The policy or contract owner shall have the right to return the policy or contract within thirty (30) days of the delivery of the policy or contract and receive an unconditional full refund of all premiums or considerations paid on it, including any policy fees or charges . . . ."); *see also* Doc. 86-1 (2011 Delivered Policy with unsigned Amendment form attached); Doc. 75-41, (Letter dated November 10, 2011 requesting the return of the signed Amendment form).[3]

    By attaching a blank Amendment form to the copy of the insurance policy that it sent to Mr. Harshman for his review, American General complied with Kentucky's insurance code: "'Policy' means the written contract of, or written agreement for, or effecting insurance, by whatever name called, and *includes all clauses, riders, indorsements, and papers which are attached thereto.*"   Ky. Rev. Stat. Ann. § 304.14-020 (emphasis

---

[3] This argument further ignores that Mr. Harshman indisputably signed Part A of the Application where he explicitly agreed that Parts A and B of the Application and any "related attachments" would be made part of the policy. Doc. 60-14, at 26.

added).   Contrary to counsel's assertion, there simply is no provision in Kentucky's insurance code that requires all of those documents to be signed before they are attached to the policy.

American General accordingly would be able to present an admissible version of the Amendment form at trial.   The Court will thus deny Mrs. Harshman's motion to strike this document.

**2.   Part B of the Application**

Mrs. Harshman similarly argues that American General cannot rely on Part B of the Application because it is not signed by Mr. Harshman personally, but rather bears his electronic signature.   Her counsel relies on a statement made during the deposition of American General's 30(b)(6) witness:

> Q   Okay. And, again, I believe I asked you earlier if there's any proof that he actually did an electronic signature.

> MR. DONAHUE: Object to the form.

> A   I don't know if there's any proof that he did it.

Doc. 74-2, at 49.

But, as discussed above, there is no requirement under Kentucky law that Mr. Harshman had to sign Part B of the Application personally in order for it to be incorporated into the policy.   Mrs. Harshman relies on the following evidentiary prohibition:   "No application for the issuance of any life

10

insurance policy shall be admissible in evidence in any action relative to such policy, *unless a true copy of the application was attached to or otherwise made a part of the policy when issued and delivered*." Ky. Rev. Stat. Ann. § 304.14-100(1) (emphasis added). No record evidence questions that American General attached a correct copy of Mr. Harshman's answers to Part B of the Application when it delivered the policy. Doc. 86-1, at 27-30.

American General accordingly would be able to present an admissible version of Part B of the Application at trial. The Court will thus deny Mrs. Harshman's motion to strike this document as well.

**B.   American General's Request to Prevent Mrs. Harshman from Relying on Donna Reznicek's Deposition Statement**

In its Consolidated Reply and Response, American General objects to Mrs. Harshman's "reliance on the statement, 'I don't know for sure that I would have made a different decision' as evidence" pursuant to Federal Rule of Civil Procedure 56(c)(2). Doc. 81, at 9 & n.1. Donna Reznicek, the American General underwriter who processed Mr. Harshman's Application, made that statement during her deposition.

Rule 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." American

11

General argues that the statement lacks a sufficient foundation because Ms. Reznicek testified that (1) "she only learned during her deposition preparation that additional information has come to light that triggered American General's decision to rescind the policy" and (2) "she did not remember the details of this additional information." Doc. 81, at 10. American General also points out that Mrs. Harshman's counsel did not show Ms. Reznicek any of the documents or additional information at issue before asking her the question that elicited the response on which he relies so heavily. *Id.*

The relevant portions of Ms. Reznicek's deposition at issue proceeded as follows:

> Q    Okay. And, so, are you aware that American General has declined to pay his beneficiary's claim?
>
> A    I am now.
>
> Q    You didn't know before I asked you the question?
>
> A    I did not know before the -- that I -- that *I found it out when I was gonna be deposed.*
>
> Q    Okay. So since August of 2014 when you learned you were gonna be deposed, what have you learned? Why was this claim -- why was his beneficiary's claim denied?
>
> MR. DONAHUE: Object to the form.
>
> A    *I don't know the specific details.*

Doc. 81-5, at 6 (emphasis added).

Q     Okay. Do you have any reason to believe, as you sit here today, that you did not have all of the medical records on Mr. Harshman[?]

A     Without looking at it, I'm not sure of the dates of the information and when they occurred.

Q     And when did you learn of these alleged additional doctor visits?

MR. DONAHUE: Object to the form. Foundation.

A     *After I learned of this deposition*.

*Id.* at 8-9 (emphasis added).

Q     Well, you said there's additional medical evidence.  Was it something [Mr. Donahue] told you? Was there a document you were provided?  I'm trying to figure out what you're referring to.

A     I believe there was a document.

Q     And what did the document tell you?

A     *I don't remember the specific details*.

Q     So if you don't remember the specific details on something you were shown yesterday, how can you sit here today and tell me that based on that document your decision would have been otherwise?

MR. DONAHUE: Object to the form.  Argument[at]ive.

A     *I don't know for sure that I would have made a different decision*.

*Id.* at 12 (emphasis added).

The Court grants American General's request based on Federal Rule of Evidence 602, which provides that a witness may only testify to matters within the witness's personal knowledge. Fed. R. Evid. 602 ("A witness may testify to a matter only if

evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").  The deposition transcript shows that Ms. Reznicek did not have any personal knowledge about American General's decision to rescind the policy or the additional medical information on which American General relied to do so.

Furthermore, Ms. Reznicek's statement that she did not "know for sure" that she "would have made a different decision" is *not* an admission that American General would have issued Mr. Harshman's policy even if it had known of the additional doctor visits that he did not disclose to American General between his date of application and the date he paid his first premium.

American General's 30(b)(6) witness, Kathleen Maio, averred:  "I can state unequivocally that American General would not have issued the Policy had it known the true facts regarding Mr. Harshman's symptoms and treatment for progressing muscle weakness."  Doc. 60-21, at ¶ 12.  No evidence in the record contradicts Ms. Maio's assertion, and Mrs. Harshman's quotation of Ms. Reznicek's statement out of context does not create a genuine dispute of material fact.

14

**C.   American General's Claim**

American General seeks a declaration from the Court stating that Mr. Harshman's policy never took effect due to his misrepresentations on Part of the Application or that the policy was void *ab initio* due to Mr. Harshman's misrepresentations. Doc. 1, at ¶ 25.  Because the undisputed facts demonstrate that Mr. Harshman did not disclose three medical treatments that he received between the date he applied for insurance and the date he paid his first premium, American General is entitled to summary judgment on this basis as well.

There can be no dispute that Mr. Harshman applied for an American General policy of insurance on September 26, 2011, Doc. 60-14, at 26, that he signed an Amendment form on November 16, 2011, Doc. 60-9, at 2, and that he paid his first premium on November 29, 2011, Doc. 60-13, at 2.  There also is no dispute that Mr. Harshman visited Dr. Liu on October 21, 2011, Doc. 60-8, at 4, Dr. Leung on November 18, 2011, Doc. 60-10, at 2, and the emergency room on November 26, 2011, Doc. 60-12, at 2, and that all of those visits occurred prior to the date on which Mr. Harshman paid his first premium to American General. Furthermore, Mrs. Harshman has not identified any evidence contradicting American General's assertion that Mr. Harshman's misrepresentations were material because they would have changed

15

answers on Part B of his Application.  Under Kentucky law, these undisputed facts entitle American General to a declaration that no policy of insurance ever existed between it and Mr. Harshman.

### 1.  Condition Precedent Argument

"It would seem unnecessary to cite authority for the proposition that where there is a clearly expressed condition precedent to liability, the court must give that condition force and effect." *Mullins v. Nat'l Cas. Co.*, 117 S.W.2d 928, 931 (Ky. 1938).  On Part A of the Application quoted in detail above, Mr. Harshman indisputably signed an unambiguous condition precedent to coverage:

> I understand and agree that even if I paid a premium no insurance will be in effect under this application, or under any new policy or any rider(s) issued by the Company, unless or until all three of the following conditions are met: (1) the policy has been delivered and accepted; and (2) the first full modal premium for the issued policy has been paid; and (3) there has been no change in the health of the Proposed Insured(s) that would change the answers to any question in the application before items (1) and (2) in this paragraph have occurred.  I understand and agree that if all three conditions above are not met: (1) no insurance will begin in effect; and (2) the Company's liability will be limited to a refund of any premiums paid, regardless of whether loss occurs before premiums are refunded.

Doc. 60-14, at 26.

On these facts, the first two conditions were satisfied.  American General delivered the policy, and Mr. Harshman accepted it and paid the first premium.  However, the third condition was

16

not satisfied. The undisputed evidence shows that Mr. Harshman's health did change and that his change in health would have led to different answers on two questions of Part B of his Application. Accordingly "no insurance [began] in effect" and American General is entitled to judgment as a matter of law.

Mrs. Harshman's argument that the "mend the hold" doctrine should prevent American General from relying on the condition precedent to rescind the insurance policy is meritless. First, Mrs. Harshman cites no Kentucky case law adopting the doctrine. Second, even if the doctrine does apply in Kentucky, it would not bar American General from relying on the condition precedent. The claim-denial letter that American General sent to Mrs. Harshman's explicitly referenced the language of the condition precedent, so American General has not actually changed its litigation position.

### 2. Misrepresentation Argument

Mr. Harshman misrepresented the state of his health when he signed the Amendment form, stating that he had not "[c]onsulted a licensed health care provider or received medical or surgical advice or treatment" since applying for an American General insurance policy. Doc. 60-9, at 2. There can be no dispute that he had consulted Dr. Liu for medical treatment in October

17

of 2011, approximately three weeks before signing the Amendment form.

But the provision of the insurance code that American General relies on, Kentucky Revised Statutes section 301.14-110(3), provides that misrepresentations on insurance applications "shall not prevent a recovery under the policy" unless:

> The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

American General therefore must demonstrate that it would not have issued the policy had it known the true state of Mr. Harshman's health. But, as discussed above, there is no evidence in the record that contradicts Ms. Maio's affidavit stating that American General would not have issued the policy had it known the true state of Mr. Harshman's health. Indeed, the Court could take judicial notice that an insurance company would not issue a life insurance policy to a person that possibly has ALS. American General was thus within its rights to rescind the policy at issue.

18

**D.   Harshman's Claims**

**1.   Violation of the Replacement Statute**

Mrs. Harshman alleges that American General violated Kentucky's replacement statute, Ky. Rev. Stat. § 304.12-030, when it contested $500,000 of the death benefit on Mr. Harshman's policy.  This claim fails as a matter of law because the plain language of the replacement statute shows that it does not apply on these facts.

The insurance code defines replacement as follows:

(a) "Replacement" means any transaction in which a new life insurance policy or annuity contract is to be purchased and it is known or should be known to the proposing producer, or to the proposing insurer if there is no producer, that by reason of the transaction, an existing life insurance policy or annuity contract has been or is to be:

1. Lapsed, forfeited, surrendered or partially surrendered, assigned to the replacing insurer, or otherwise terminated;

2. Converted to reduced paid-up insurance, continued as extended term insurance, or otherwise reduced in value by the use of nonforfeiture benefits or other policy values;

3. Amended so as to effect either a reduction in benefits or in the term for which coverage would otherwise remain in force or for which benefits would be paid;

4. Reissued with any reduction in cash value; or

5. Used in a financed purchase[.]

*Id.* § 304.12.-030(1)(a).  There was no replacement transaction under Kentucky law between American General and Mr. Harshman

19

because there is no evidence that Mr. Harshman used his previous Columbus Life policy in any way listed in the statute.  The only evidence supports the opposite conclusion:  that Mr. Harshman's Columbus Life policy remained in full force until his death.

There is apparently no Kentucky authority on the interpretation of this statute.  As the Court interprets the statute, its purpose is to prevent an insured from inadvertently, or upon being persuaded by an insurance agent, replacing a policy that is no longer contestable with a new policy that is contestable.  This did not happen here, however, for the first policy was not cancelled, was not contestable, and the insured's beneficiary collected under it.

If there was no replacement transaction under Kentucky law, then American General could not have violated the replacement statute.  The Court accordingly will grant summary judgment to American General on Mrs. Harshman's claim for violation of the replacement statute.

### 2. Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing

It is axiomatic that the first element in a claim for breach of contract is the existence of a valid contract.  *See Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. Ct. App. 2007) (identifying the elements of the claim as the existence of a contract, breach of that contract, and

20

damages).   And a party can only breach the covenant of good faith and fair dealing where a valid contract exists.  *Quadrille Bus. Sys. v. Ky. Cattleman's Assoc.*, 242 S.W.3d 359, 365 (Ky. Ct. App. 2007) ("Under Kentucky law, in the absence of an underlying contract, no covenant of good faith and fair dealing arises.").   Because the condition precedent to Mr. Harshman's policy was never satisfied, there never was a valid contract between American General and Mr. Harshman.   The Court accordingly will grant summary judgment to American General on Mrs. Harshman's claims for breach of contract and breach of the covenant of good faith and fair dealing.

### 3.   Bad Faith Claims

Mrs. Harshman brings three claims for bad faith against American General.   The first is a common law tort claim.   The second is a claim for violating the UCSPA.   The third is a claim for violating the KCPA.

To succeed on a claim for bad faith, whether common law or statutory, Mrs. Harshman must show (1) that the insurer was obligated to pay the claim under the terms of the policy, (2) that the insurer lacked a reasonable basis in law or fact for denying the claim, and (3) that the insurer knew there was no reasonable basis for denying the claim.   *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000).   Because an

21

element of each bad faith claim is American General's obligation to pay on the policy and there was no valid contract of insurance between it and Mr. Harshman, American General did not have an obligation to pay.   The Court accordingly will grant summary judgment to American General on all three of Mrs. Harshman's claims for bad faith.

### 4. Unjust Enrichment

Mrs. Harshman also brings a claim for unjust enrichment, arguing that American General was unjustly enriched when it refused to pay on the policy.   This argument is without merit.

The elements of a claim of unjust enrichment under Kentucky law are (1) a "benefit conferred on [American General] at [Mrs. Harshman's] expense," (2) "a resulting appreciation of benefit by [American General]," and (3) "inequitable retention of benefit without payment for its value." *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. Ct. App. 2009).   On these facts, Mrs. Harshman has not conferred a benefit on American General.   It is undisputed that after rescinding Mr. Harshman's policy American General returned to Mrs. Harshman all premiums paid with interest.   The Court accordingly will grant summary judgment to American General on Mrs. Harshman's claim for unjust enrichment.

### 5.   Punitive Damages

There is no recovery and no bad faith, therefore obviously the insured cannot recover punitive damages.

Therefore, having reviewed this matter, and being otherwise sufficiently advised,

**IT IS ORDERED** that American General's motion for summary judgment (Doc. 60) be, and is hereby, **GRANTED**.  Mrs. Harshman's motion for summary judgment (Doc. 73) and motion to strike (Doc. 76) be, and are hereby, **DENIED**.  A separate judgment shall enter concurrently herewith.

This 16th day of September, 2015.



Signed By:
**_William O. Bertelsman_** WOB
**United States District Judge**

23

24